**Jeffrey DAHL and Mary Dahl,**
**Plaintiffs–Appellees,**

v.

**Mike YOUNG and Dragon Studios,**
**Inc., Defendants–Appellants.**

**No. 92CA0659.**

Colorado Court of Appeals,
Div. I.

March 25, 1993.

As Modified on Denial of Rehearing
May 20, 1993.

Certiorari Denied Nov. 22, 1993.

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

Joseph Fattor, Leadville, for plaintiffs-appellees.

Opinion by Judge METZGER.

Defendants, Michael Young and Dragon Studios, Inc., appeal the judgment and award of attorney fees entered in favor of plaintiffs, Jeffrey and Mary Dahl. We affirm the judgment, vacate the award of attorney fees, and remand the cause for further proceedings.

This dispute arises from a small claims action defendants had initiated in Lake County. Defendants claimed they had provided certain repair services to the Dahls, who had refused to pay. After trial, the small claims court entered judgment in favor of defendants in the amount of $889.34. The Dahls immediately paid the full amount of the judgment.

Approximately one month later, defendant Young went to the court clerk's office and asked for "the papers that I need to file after winning a Small Claims." He paid a $5 fee, received a piece of paper (a transcript of judgment), and immediately filed the paper with the Clerk and Recorder.

Later, the Dahls discovered that their title to certain property had been clouded. Upon investigation, they discovered that the denial was predicated on the existence of a recorded judgment lien from the small claims action.

Thereafter, the Dahls sued defendants pursuant to § 38–35–109(3), C.R.S. (1982 Repl.Vol. 16A). That statute provides, in pertinent part:

> Any person who offers to have recorded or filed in the office of the county clerk and recorder any document purporting to create a lien against real property, knowing or having a reason to know that such document is forged or groundless, contains a material misstatement or false claim, or is otherwise invalid, shall be liable to the owner of such real property for the sum of not less than one thousand dollars or for actual damages

caused thereby, whichever is greater, together with reasonable attorney fees....

The Dahls asserted defendants had violated the statute by knowingly recording a judgment lien after the judgment had been fully satisfied. Defendants immediately obtained and recorded a satisfaction of judgment.

After trial to the court, judgment was entered in favor of the Dahls for $1,000 (the penalty set out in § 38–35–109(3)) and, pursuant to that statute, the trial court awarded them attorney fees and costs of $5,847.78.

## I.

■ Defendants first contend the trial court erred in concluding that they had violated the terms of § 38–35–109(3) because the transcript of judgment does not, on its face, purport to create a lien. We disagree.

A document must meet only statutory or common-law requirements to create a lien. It need not, on its face, purport to create a lien to come within the purview of the statute. *People v. Forgey*, 770 P.2d 781 (Colo.1989).

A transcript of judgment, when certified by the clerk of the court and filed with a clerk and recorder, meets the statutory requirements necessary to create a lien. *See* § 13–52–102(1), C.R.S. (1987 Repl.Vol. 6A). Consequently, defendants' argument fails.

## II.

Defendants next contend that the trial court erred in finding that Young knowingly violated the provisions of § 38–35–109(3). Again, we disagree.

Our supreme court in *People v. Forgey, supra*, at 784, determined that: "[T]he dispositive factor is ... whether the document was filed by a party who knew or had reason to know that the document would unjustifiably cloud title to real property."

Here, the trial court concluded, from the evidence presented, that Young knew or had reason to know that the document was unfounded and that it would cloud the Dahls' title.

■ If there is sufficient evidence in the record to sustain a trial court's findings, the reviewing court is bound by the trial court's determination, even though it is possible for reasonable persons to arrive at a different conclusion based on the same facts. *Whatley v. Wood*, 157 Colo. 552, 404 P.2d 537 (1965). Issues relating to the credibility of the witnesses, sufficiency of proof, probative effect, weight of the evidence, and state of mind, as well as inferences and conclusions drawn therefrom, are within the province of the trial court. *Deas v. Cronin*, 190 Colo. 177, 544 P.2d 991 (1976).

■ Young testified that, two weeks after the small claims judgment was satisfied, he read the back of the small claims document provided to him by the clerk of the court. That document outlined the procedures for filing a lien on a judgment debtor's property. Two weeks after that he went to the clerk's office and asked for "the papers that I need to file after winning a small claims." The clerk of the court gave him a transcript of judgment for the judgment the Dahls had paid, which Young then filed with the county clerk and recorder.

He stated that he did not understand he was creating a lien on the property. He said he thought he had to make the matter part of the public record.

Additionally, Young testified that he had conducted a refrigeration and heating business since 1988; that he had consulted with two attorneys regarding the small claims case; that he was familiar with the operations and functions of the office of the Lake County Clerk and Recorder; and that he knew the difference between the functions of the court clerk and the Clerk and Recorder. He admitted that, on a number of occasions, he had recorded documents in the office of the Clerk and Recorder for the purpose of making them "a matter of public record."

Other testimony evidenced that Young wanted to file a document to assure that

there was a public record that a judgment had been entered against the Dahls in case there were any inquiries into their credit.

Given these facts, we conclude the trial court could reasonably find that Young had knowingly filed the transcript of judgment with the county clerk and recorder, and we may not disturb that finding on review.

### III.

Defendants contend the trial court erred in refusing to apply the last sentence of § 38–35–109(3) to the circumstances of this case. We find no error.

■ The last sentence of § 38–35–109(3) provides:

> Any grantee or other person purportedly benefited by a recorded document which creates a lien against real property and is forged or groundless, contains a material misstatement or false claim, or is otherwise invalid who willfully refuses to release such document of record upon request of the owner of the real property affected shall be liable to such owner for the damages and attorney fees provided for in this subsection (3).

Defendants argue that this sentence grants them an opportunity to rectify the erroneous filing before any liability under the statute would apply. To the contrary, we conclude that this part of the statute applies only to a person who is not responsible for recording or filing the lien.

■ In analyzing a statute, we must give effect to the statute as a whole and implement the intent of the General Assembly. *See Davis v. Izaak Walton League,* 717 P.2d 984 (Colo.App.1985).

Our construction of this subsection is in line with the specific intent of the General Assembly. The legislative history shows that § 38–35–109(3) was proposed to halt the filings of unjustified liens against real property. The last sentence of § 38–35–109(3) was intended to facilitate the quick withdrawal of an unjustified lien which had been filed in the name of someone other than the individual who had recorded the document. The General Assembly specifi-

cally intended the last sentence to apply only to those persons who benefit from a recorded document filed by another person and who refuse to release that document.

As noted in testimony concerning § 38–35–109(3):

> Someone determined to harass and file the document purportedly filed on behalf of someone else, someone forged a signature to the deed, a signature of a third party clearly innocent ... it might be hard to get them to remove under the first sentence of § 3 but we think that a person who is the grantee or apparent beneficiary of a false document, whatever its nature, refuses to release it once the situation is brought to his attention, then he is ratifying what someone has done on his behalf and ought to suffer the consequences.

*See* Hearings on S.B. 103 before the Subcommittee of the Senate Judiciary Committee, 52d General Assembly, Second Session (February 6, 1980).

Representative Ronald Strahle, Chairman of the House Judiciary Committee, reiterated this theme when he stated:

> The last part [of § 3], the part we're talking about is not the situation where the person who benefited is the same person who encumbered.

Hearings on S.B. 103 before the Subcommittee of the House Judiciary Committee, 52d General Assembly, Second Session (February 26, 1980).

Young admittedly filed the document at issue in this case. Thus, as the trial court ruled, the last sentence of § 38–35–109(3) does not apply to him.

### IV.

■ Defendants next argue the trial court erred in holding them jointly and severally liable for the judgment. However, we will not review this issue because it was not raised at trial. Instead, it was asserted only after all evidence and argument were concluded. *See In re Estate of Stevenson v. Hollywood Bar & Cafe, Inc.,* 832 P.2d 718 (Colo.1992).

## V.

Defendants finally argue that the trial court erred in its determination of the amount of attorney fees awarded to the Dahls. Specifically, defendants contend that the trial court did not make the necessary findings of reasonableness. We agree.

Section 38–35–109(3) provides for an award of reasonable attorney fees. The determination of reasonableness is a question of fact for the trial court, and such will not be disturbed on review unless it is patently erroneous and unsupported by the evidence. *Hartman v. Freedman,* 197 Colo. 275, 591 P.2d 1318 (1979).

If, as here, the statute does not provide a specific definition of "reasonable," then such compensation should be awarded, in light of all the circumstances, for the time and effort reasonably expended by the prevailing party's attorney. *Spensieri v. Farmers Alliance Mutual Insurance,* 804 P.2d 268 (Colo.App.1990).

In *Spensieri,* this court stated that the initial estimate by the court of a reasonable attorney fee should be based on the evidence of the "lodestar" amount. This amount represents the number of hours reasonably expended, multiplied by a reasonable hourly rate.

The lodestar amount carries a strong presumption of reasonableness. However, an attorney representing a client must be held to a reasonable standard of competency in preparing and trying a case and must give consideration to the economic aspects involved in the controversy. If the attorney provides a reasonable and rational basis for the work done, he or she should be compensated accordingly; conversely, if the attorney fails to establish such a basis, limiting the award of attorney fees is appropriate. *Spensieri v. Farmers Alliance Mutual Insurance, supra.*

Our review of the record indicates that the trial court attempted an initial determination of the lodestar amount. However, in the trial court's findings of fact, while it did determine the hourly rate, there is no mention of the reasonableness of the hours expended or the propriety of the tasks performed. Thus, the trial court's findings are deficient. A finding as to the reasonableness of these factors must be made.

The judgment is affirmed in all respects except as to the amount of attorney fees. The award of attorney fees is vacated, and the cause is remanded with directions that the trial court make specific findings as to the reasonableness of the services provided and the hours expended by the Dahls' attorney and enter an appropriate award based thereon.

PIERCE and DAVIDSON, JJ., concur.