**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 14, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RICKY EUGENE CLARK,
individually and on behalf of all others
similarly situated,

Plaintiff-Appellant,

v.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY, an Illinois corporation,

Defendant-Appellee.

No. 04-1315

(D. Colorado)

(D.C. No. CIV-00-B-1841)

## ORDER AND JUDGMENT[*]

Before **HENRY**, **HOLLOWAY**, and **O'BRIEN**, Circuit Judges.

On July 18, 1996, an automobile insured by State Farm Mutual Automobile

Insurance Company ("State Farm") struck Ricky Eugene Clark, a pedestrian.  Mr.

Clark filed a class-action suit against State Farm to collect extended personal

injury protection ("PIP") benefits under the Colorado Auto Accident Reparations

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Act ("CAARA"). *See* COLO. REV. STAT. §§ 10-4-701 to 10-4-726 (2002).[1] He believed that State Farm's automobile insurance policy did not conform to CAARA and should be reformed to provide added PIP benefits. Protracted litigation ensued, and the district court eventually concluded that Mr. Clark was entitled to $200,000 in benefits, with the policy reformation taking effect on the date of the court's order–December 19, 2003. *See Clark v. State Farm Mut. Auto. Ins. Co.*, 292 F. Supp. 2d 1252, 1270 (D. Colo. 2003) ("*Clark II*"). We recently affirmed the district court. *See Clark v. State Farm Mut. Auto. Ins. Co.*, 433 F.3d 703 (10th Cir. 2005) ("*Clark III*").

After the district court's December 2003 order, Mr. Clark also filed a motion for attorney fees, contending that his successful contract reformation claim entitled him to attorney fees under CAARA. The district court denied attorney fees, and Mr. Clark now challenges that decision on appeal. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm the district court.

## I. BACKGROUND

---

[1]Unless otherwise noted, all references to statutes in this opinion are to COLO. REV. STAT. §§ 10-4-701 to 10-4-726 (2002). CAARA was repealed effective July 1, 2003, but the parties agree its provisions apply to the 1996 accident.

We recently described the facts of this case and need not repeat them in detail here. *See Clark III*, 433 F.3d at 706-09. Following the 1996 accident, Mr. Clark brought various claims against State Farm, including claims for reformation of contract and for breach of contract for failure to pay PIP benefits. He maintained that the coverage provided by State Farm's policy did not conform to state law after the decision by the Colorado Court of Appeals in *Brennan v. Farmers Alliance Mutual Insurance Co.*, 961 P.2d 550 (Colo. Ct. App. 1998). The federal district court dismissed all claims.

On appeal, we reversed the district court's dismissal of certain claims, concluding that *Brennan* required reformation of State Farm's policy to provide extended PIP benefits for injured pedestrians like Mr. Clark. *Clark v. State Farm Mut. Auto. Ins. Co.*, 319 F.3d 1234 (10th Cir. 2003) ("*Clark I*"). We remanded the case for the district court to determine an effective date of reformation and the amount of extended PIP benefits, if any, to which Mr. Clark was entitled. *Id.* at 1241-43. On remand, the district court concluded that (1) the date of its order–December 19, 2003–was the appropriate reformation date, and (2) Mr. Clark was entitled to a statutory aggregate cap of $200,000 in benefits. *See Clark II*, 292 F. Supp. 2d at 1270.

Mr. Clark and State Farm then appealed various decisions of the district court's *Clark II* order. Mr. Clark appealed (1) the effective date of reformation,

(2) the district court's application of an aggregate cap to the policy, and (3) the policy's reformation only for pedestrians, instead of for all eligible insured persons. State Farm cross-appealed, challenging the amount of PIP benefits to which Mr. Clark should be entitled after reformation. We recently affirmed the district court on all issues raised. *See Clark III*, 433 F.3d at 714.

Soon after the *Clark II* order of December 2003, Mr. Clark also filed a motion for attorney fees under CAARA, which the district court denied. *See* Aplt's App. vol. II, at 417-19 (Order, filed July 16, 2004). In this appeal, Mr. Clark now challenges the district court's order denying him attorney fees incurred to litigate his contract reformation claim against State Farm.[2]

## II. DISCUSSION

"In the absence of a statute, court rule, or private contract to the contrary, attorney fees are not recoverable by a prevailing party in either a contract or a tort action." *Adams v. Farmers Ins. Group*, 983 P.2d 797, 801 (Colo. 1999) (*"Adams II"*). Section 708 of CAARA, however, provided an insured with remedies for

---

[2]This attorney-fees appeal was orally argued in conjunction with the merits appeals to *Clark II*. *See Clark III*, 433 F.3d at 703. We previously certified to the Colorado Supreme Court a question of state law that we believed was determinative to Mr. Clark's claim for attorney fees; unfortunately, the court respectfully declined to answer the question. Left to our own devices, we will do the best we can to expound state law from our reading of the cases.

overdue payments to ensure the timely resolution of claims for PIP benefits. That section, entitled "Prompt payment of direct benefits," provided in part:

(1) Benefits for any period are overdue if not paid within thirty days after the insurer receives reasonable proof of the fact and amount of expenses incurred during that period. . . . *In the event that the insurer fails to pay such benefits when due, the person entitled to such benefits may bring an action in contract to recover the same.*

. . .

(1.5) If a dispute arises under subsection (1) of this section, . . . the insured, the injured person entitled to benefits, or the insurer may bring an action in contract in the appropriate court to resolve the dispute. . . .

. . .

(1.7)(c) In determining the amount of attorney fees, if any, to be awarded to the insured the arbitrator or court shall consider the following:
(I) The award of attorney fees to the insured shall be in direct proportion to the degree by which the insured was successful in the proceeding.

§ 708 (emphasis added).

In January 2004, Mr. Clark filed a motion for attorney fees. He contended that he was entitled to judgment for his costs and attorney fees as a result of the entry of the *Clark II* order. The district court concluded that section 708 did not authorize attorney fees to Mr. Clark because his claims did not concern a failure to pay "overdue" PIP benefits. *See* § 708(1). Instead, the court reasoned that he prevailed under *Clark II* on his contract reformation claim, with reformation

effective December 19, 2003. "Thus, the first date Mr. Clark was entitled to the damages awarded in this case was that same day." Aplt's App. vol. II, at 418. The district court further found that the language of the State Farm policy did not provide Mr. Clark with a right to attorney fees. *Id.* at 418-19.

On appeal, Mr. Clark again maintains that his successful contract reformation claim entitles him to attorney fees under CAARA and the terms of the State Farm policy. We review de novo "any statutory constructions or legal conclusions that provide a basis for the award" of attorney fees, "[a]lthough the ultimate decision to award fees rests within the district court's discretion." *Phelps v. Hamilton*, 120 F.3d 1126, 1129 (10th Cir. 1997).

Mr. Clark first argues that the district court should have reviewed his request for fees under CAARA's subsection 708(1.7), which specifically deals with attorney fees, rather than subsection 708(1), which allows a claimant to bring an action for "overdue" benefits. A successful contract reformation claim, according to Mr. Clark, entitles him to seek attorney fees without regard to whether the benefits were due, overdue, or denied. He further contends that the State Farm policy and subsection 708(1.5) entitle him to attorney fees. Both provide that "[i]f a dispute arises," the insured "may bring an action in contract in the appropriate court to resolve the dispute." § 708(1.5); Aplt's App. vol. I, at 51, § II(b)(5) (Amendment 6090RR).

We are not convinced by Mr. Clark's assertions. First, and most importantly, entry of the *Clark II* order did not immediately provide entitlement to attorney fees under section 708 because Mr. Clark did not prevail on a claim for "overdue" payments. Instead, the district court reformed the State Farm policy to make additional PIP benefits available *beginning* on the date of the order, which was December 19, 2003. No additional PIP benefits were owed, or "due," to Mr. Clark until the reformation became effective. The PIP benefits could not have been "overdue" as of the order's date if they had just become "due" that day. *See Clark I*, 319 F.3d at 1244 ("[I]f reformation is ordered to correspond to the date of entry of the order of reformation, there would be no pre-existing duty to pay extended PIP benefits.") (referencing 2 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 26:3 (3d ed. 1995) (hereinafter "COUCH")).

Colorado law provides that, in an insured's conventional claim for attorney fees, we first determine if "the insurer failed to pay such benefits when due." *Adams v. Farmers Ins. Group*, 958 P.2d 502, 504 (Colo. Ct. App. 1997) ("*Adams I*"). "Without this predicate act [i.e., the insurer's failure to pay PIP benefits when due], the statutory claim fails, and, with it, the court's authority to award fees to the insured under § 10-4-708(1.7)(c)." *Id.*; *see also Adams II*, 983 P.2d at 804 (Martinez, J., concurring) ("[A]ny attorney fees award [under section 708] must logically be understood to rest, albeit indirectly, upon the insurer['s] failure

to timely pay benefits–the factual and legal predicate for the underlying action."). *Clark II* did not provide Mr. Clark with the "legal predicate" under subsection 708(1) to request attorney fees; rather, that order merely entitled him to extended PIP benefits beginning on December 19, 2003.

Second, Mr. Clark's reliance on the Colorado Supreme Court's decision in *Adams II* is misplaced. There, a jury awarded PIP benefits to the insureds but inconsistently found in a special interrogatory that the PIP benefits were not overdue. *Adams II*, 983 P.2d at 800. Following the jury verdict, the trial court awarded attorney fees to the insureds. On appeal, the insurer only challenged the insureds' entitlement to attorney fees and "did *not* appeal the jury's award of . . . PIP benefits." *Id.* A state appellate court reversed the trial court's order granting attorney fees. *See Adams I*, 958 P.2d at 504-05. The Colorado Supreme Court, however, concluded that the insureds could recover attorney fees under subsection 708(1.7), despite the jury's finding that benefits were not "overdue." "[A]bsent an appeal of the PIP benefits award, the threshold requirement for entitlement to fees under the Act is whether the party succeeded monetarily in the proceeding below." *Adams II*, 983 P.2d at 803 (emphasis omitted). "[W]here the merits of the underlying PIP benefits claims are *not* appealed, courts may not reevaluate whether the requisite elements of such a claim were present." *Id.* at 802.

We read *Adams II* to be relevant to a different set of facts than we have here. Its holding is applicable when an insurer opts not to appeal the merits of an insured's successful PIP benefits claim–which by its definition under subsection 708(1) requires that benefits *were* overdue–despite a jury's special interrogatory that the benefits *were not* overdue. In the appeal before us, the procedural posture and the *Clark II* holdings are wholly different from *Adams II*. In December 2003, the district court concluded that reformation of the State Farm policy necessarily entitled Mr. Clark to additional PIP benefits. The court also decided, based on equitable factors, that the date of its order should be the effective reformation date. Therefore, as we stated earlier, no PIP benefits were "overdue" as of December 19, 2003. *See Clark I*, 319 F.3d at 1244 ("The fact that the insured may be entitled to obtain a reformation of the policy does not impose any obligation upon the insurer to conform to such 'reformed' policy before a court has made such reformation." (quoting COUCH § 26:3)). Further, unlike the *Adams* litigation, on appeal both parties raised claims on the merits here. Mr. Clark appealed the effective date of reformation, the application of an aggregate cap to the policy, and the scope of the policy's reformation only to include pedestrians; State Farm appealed the level of benefits to which Mr. Clark was entitled.

Given the effective reformation date, it is irrelevant to consider whether State Farm actually appealed the effective date or any other part of the district

court's December 2003 order. Indeed, for our purposes, the pertinent part of the district court's order–the effective date of reformation, which we recently upheld on appeal–favored State Farm, and the insurer had no reason to appeal that. It makes little sense to encourage State Farm to appeal a district court's decision only so it can be in a more favorable position to avoid payment of attorney fees. In *Adams II*, though, the proceedings were much different. In that context, an appellate court's re-examination of the "factual underpinnings of a verdict in favor of insureds," even though the insurers did not appeal, "clearly favors the position of insurers" because the insurers did not have "the expense of appealing the merits of the underlying claim." *Adams II*, 983 P.3d at 803. Therefore, while it was relevant to consider whether the insurers actually appealed the underlying claim in *Adams*, here we need not examine the nature of State Farm's appeal when considering whether attorney fees are appropriate.

Third, Mr. Clark cites dicta from *Adams II* to argue that State Farm's *denial* of his PIP benefits claims entitles him to attorney fees under CAARA. In *Adams II*, the court stated in a footnote: "We also note, without deciding, that it is possible to reconcile the jury's monetary verdict with its finding that the benefits were not 'overdue' if one assumes that the [insurer] erroneously *denied* [the insureds'] claims for the $22,000 in PIP benefits." 983 P.3d at 804 n.8. The Colorado Supreme Court admittedly did not decide that an insurer's denial of a claim would be a sufficient legal predicate to recover PIP benefits under

-10-

subsection 708(1). Further, it specifically noted elsewhere that "the payment of PIP benefits must have been 'overdue' before an insured may bring a cognizable claim under [CAARA]." *Id.* at 801. Regardless of any difference between an insurer's failure to pay PIP benefits when due and its denial of such benefits, judicial reformation of State Farm's policy did not obligate the insurer to pay promptly–or not deny–Mr. Clark's PIP benefits until December 19, 2003.

Fourth, we do not adopt Mr. Clark's position that entitlement to attorney fees is controlled only by whether an insured succeeds in prosecuting his case. Section 708 is entitled "Prompt payment of direct benefits," and it "establishes a limited time frame in which insurance companies must quickly pay claims due under insureds' personal injury protection provisions of their automobile insurance contracts." *State Farm Mut. Auto. Ins. Co. v. Broadnax*, 827 P.2d 531, 536 n.13 (Colo. 1992). We distinguish this provision from other states' no-fault statutes that expressly provide attorney fees to any successful claim by an insured against an insurer. *See, e.g.*, FLA. STAT. § 627.428(1) (explaining that an insurer is liable for fees in a proceeding wherein an insured prevails against the insurer); *id.* § 627.736(8) (applying the attorney-fee provision of section 627.428 to PIP benefits claims).

We further agree with the district court that the State Farm policy and subsection 708(1.5), which both allow the insured to bring an action in contract if a dispute arises, in no way mandate the recovery of attorney fees. The State Farm

policy simply specifies that the payment of benefits to the insured will follow CAARA and authorizes any suit to resolve a benefits dispute.  Moreover, the plain language of subsection 708(1.5) references "a dispute aris[ing] under subsection (1)," and we have previously concluded that Mr. Clark does not have a predicate claim under subsection 708(1) because his benefits were not "overdue."

Because we affirm the district court on other grounds, we need not address CAARA's detailed notice requirements to seek attorney fees.  *See* § 708(1.7)(a) (outlining certain requisite procedures for a claimant to follow when claiming benefits and attorney fees).

## III.  CONCLUSION

Accordingly, we AFFIRM the district court's order denying Mr. Clark's motion for attorney fees.  We also DENY as moot State Farm's motion for leave to file a response to Mr. Clark's supplemental brief regarding the timely filing of notice of claims.

Entered for the Court,

Robert H. Henry
Circuit Judge

-12-