Whitney BRODY, Plaintiff–Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
Defendant–Appellee.

Nos. 07CA0940, 07CA1512.

Colorado Court of Appeals,
Div. IV.

Aug. 7, 2008.

Antonio Bates Bernard, P.C., Howard M. Haenal, Denver, Colorado; Miller Makkai & Dowdle, Alexander J. Makkai, Jr., Denver, Colorado, for Plaintiff–Appellant.

Fisher, Sweetbaum & Levin, P.C., Jon F. Sands, Chelsey M. Burns, for Defendant–Appellee.

Opinion by Judge VOGT.

Plaintiff, Whitney Brody, appeals the trial court judgment awarding attorney fees to her, in an amount less than she sought, following a jury verdict in her favor against defendant, State Farm Mutual Automobile Insurance Company. Brody also appeals the trial court's order awarding costs to State Farm. We affirm the judgment and the order.

Brody sustained injuries in an automobile accident in 2001. She brought this action against State Farm, her motor vehicle insurer, asserting claims for breach of contract, willful and wanton failure to pay personal injury protection (PIP) benefits, bad faith breach of contract, outrageous conduct, and violation of the Colorado Consumer Protection Act (CCPA). The claims were based on State Farm's refusal to pay PIP benefits for a "Sleep Number" bed after Brody's physician had prescribed an orthopedic or firm mattress for her accident-related back injuries.

The CCPA claim was dismissed, and Brody subsequently withdrew her claim for outrageous conduct. The case was then tried to a jury. The jury returned a verdict in favor of Brody on her breach of contract claim, awarding her $1,829.20. It found in favor of State Farm on Brody's claims for willful and wanton conduct and bad faith breach of insurance contract.

Brody then sought her attorney fees pursuant to former section 10–4–708(1.7)(c), Ch. 203, sec. 1, 1991 Colo. Sess. Laws 1187, of the now repealed Colorado Auto Accident Reparations Act (No–Fault Act). She requested fees in the amount of $106,280.00, represent-

ing 531.4 hours of work performed by her attorneys, at $200.00 per hour, prior to the date State Farm made an $8,000.00 statutory offer of settlement. The trial court awarded Brody $1,302.17, or forty percent of $3,255.43—the sum of the jury award plus $1,426.23 in interest—because that was the amount Brody would owe for attorney fees under her contingent fee agreement with her attorneys. Brody has appealed from that judgment.

Both parties also submitted requests for costs to the trial court. The court determined that State Farm was the prevailing party and awarded it $10,462.80 in costs. Brody subsequently appealed from that order as well, and the two appeals were consolidated in this court.

## I. Attorney Fees

Brody contends the trial court misapplied former section 10–4–708(1.7)(c) when it declined to award fees in excess of those she was obligated to pay pursuant to her contingent fee agreement. We disagree.

## A. Background

Prior to 1991, the predecessor versions of section 10–4–708(1.7)(c) required an insurer who was found liable for unpaid benefits to pay the "reasonable attorney fees" incurred by the person seeking such benefits. In determining the amount of such fees, courts were not limited to the amount of fees owed under a contingent fee agreement, but were to consider such agreement only as one factor in assessing the reasonableness of the fee claimed. *See Spensieri v. Farmers Alliance Mutual Insurance Co.*, 804 P.2d 268, 271 (Colo.App.1990). The *Spensieri* analysis is consistent with that of courts that have held, in other contexts, that "reasonable" attorney fees were not limited to the amount owing under a contingent fee agreement. *See Blanchard v. Bergeron*, 489 U.S. 87, 91, 96, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989) (fee awards in civil rights cases under 42 U.S.C. § 1988, which allows prevailing party a "reasonable attorney's fee," are not limited by terms of contingent fee agreement; such awards are to be distinguished from those in "a private tort suit benefiting only the indi-

vidual plaintiffs whose rights were violated" (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 574, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986))); *City of Wheat Ridge v. Cerveny*, 913 P.2d 1110, 1117 (Colo.1996) (relying on *Blanchard* in concluding that plaintiffs in Taxpayer's Bill of Rights action could recover attorney fees under provision allowing "reasonable attorney fees" to successful plaintiffs, even if they were not in fact obligated to pay attorney fees).

In 1991, the General Assembly replaced the prior statutory attorney fee provisions by enacting, as part of H.B. 91–1133 (captioned "An Act Concerning Measures for Cost Containment under the 'Colorado Auto Accident Reparations Act'"), the version of section 10–4–708(1.7)(c) in effect here:

(c) In determining the amount of attorney fees, if any, to be awarded to the insured the arbitrator or court shall consider the following:

(I) The award of attorney fees to the insured shall be in direct proportion to the degree by which the insured was successful in the proceeding. The determination of the degree of the insured's success shall be based upon a comparison of the amount of benefits set forth in the notice of amount of benefits claimed and the amount of benefits recovered in the proceeding. The percentage resulting from this comparison shall be the degree by which the insured was successful.

(II) The arbitrator or court may modify the award of attorney fees as set forth in subparagraph (I) after considering the amount of and the timing of any written settlement offers made by any party as compared with the amount as set forth in the notice of amount of benefits claimed. A settlement offer shall not be shown to the arbitrator or court until after the finder of fact has determined the amount of benefits payable, if any.

(III) *In no event shall the arbitrator or court enter an award of attorney fees which is in excess of actual reasonable attorney fees.*

(Emphasis added.)

It is undisputed in this case that, for purposes of subparagraph (I) of section 10–4–

708(1.7)(c), Brody was "successful in the proceeding" on her PIP benefits claim and was awarded the entire amount she sought on that claim. It is also undisputed that, for purposes of subparagraph (II), the trial court did not modify the award based on State Farm's settlement offer. The issue before us is whether Brody was therefore entitled to one hundred percent of the fees she claimed, as she contends, or one hundred percent of the fees she was actually obligated to pay under the contingent fee agreement, as the trial court found. Resolution of that issue turns on the meaning of subparagraph (III) ("In no event shall the arbitrator or court enter an award of attorney fees which is in excess of actual reasonable attorney fees."), which had no analog in the predecessor statutes.

### B. Section 10–4–708(1.7)(c)(III)

When construing a statute, we seek to effectuate the intent of the General Assembly. To discern that intent, we first look to the statutory language itself, giving words and phrases their commonly accepted and understood meaning. *See Adams v. Farmers Insurance Group,* 983 P.2d 797, 801 (Colo.1999). In so doing, we must give effect to every word, rendering no word superfluous. *See Colorado Water Conservation Board v. Upper Gunnison River Water Conservancy District,* 109 P.3d 585, 597 (Colo. 2005).

The language of section 10–4–708(1.7)(c)(III) is unambiguous. "In no event" and "shall" indicate that the General Assembly intended the provision to be mandatory. *See Pearson v. District Court,* 924 P.2d 512, 516 (Colo.1996). "Actual" is commonly understood to mean "existing in fact or reality." *See Webster's Third New International Dictionary* 22 (1981).

Contrary to Brody's contention on appeal, no word used in subsection (III) requires further definition by the legislature in order to make the statute unambiguous. Rather, by its plain language, the statute limits the previous discretion of the trial court in awarding reasonable attorney fees and now mandates that the court shall in no event award fees in excess of the insured's "actu-

al"—that is, "existing in fact"—reasonable attorney fees.

To permit a court, notwithstanding this provision, to award attorney fees in excess of the insured's actual fees would be to read the word "actual" out of the statute, which we may not do. *See Colorado Water Conservation Board,* 109 P.3d at 597. We are not persuaded by Brody's assertion that "actual" can be given meaning by interpreting it to mean "reality based" and then inquiring whether the fees claimed reflect the hours spent by the attorney seeking the fees. The statute uses "actual" to modify "fees," not "hours."

Brody's reliance on *Cerveny, Blanchard,* and *Spensieri* in support of a contrary conclusion is misplaced. Those cases all dealt with provisions permitting awards of reasonable attorney fees where the court's discretion was not limited by any language precluding the award from exceeding "actual" reasonable attorney fees. Further, although *Bunting v. Regional Transportation District,* 919 P.2d 924 (Colo.App.1996), *overruled in part by Adams,* 983 P.2d at 802, referenced the *Spensieri* analysis in a case decided after the enactment of section 10–4–708(1.7)(c)(III), we do not agree with Brody that *Bunting* supports a conclusion contrary to the plain language of the statute. The *Bunting* division did not, and did not need to, address the effect of section 10–4–708(1.7)(c)(III) on the *Spensieri* analysis, because the parties in *Bunting* had stipulated to the amount of attorney fees. 919 P.2d at 926.

Brody argues that limiting her fee award to those fees she actually is obligated to pay is inconsistent with the No–Fault Act's purpose, set forth in former section 10–4–702, of "avoid[ing] inadequate compensation to victims of automobile accidents." We are not persuaded that the trial court's construction of section 10–4–708(1.7)(c)(III) would in fact be inconsistent with that purpose, especially inasmuch as insureds who recover only minimal benefits would still be entitled to receive the full amount of their actual reasonable attorney fees, even if the fees exceeded their recovery. In any event, because section 10–

4–708(1.7)(c)(III) is unambiguous, we may not disregard its plain language in the name of advancing a statutory purpose.

## C. Application

Under paragraph 3(a) of her contingent fee agreement, Brody was obligated, at the conclusion of trial, to pay her attorneys forty percent of the "gross proceeds" she recovered in the lawsuit. The trial court did not err in relying on this provision to calculate her actual attorney fees as of that time, and to make an award of that sum. While the contingent fee agreement provided for a different fee calculation in paragraph 3(b), the trial court properly did not use that section as a basis for its calculation because Brody stated in her reply in support of her fee motion that: "Under the circumstances of the case, the parties will enforce ¶ 3(a) to calculate fees."

In sum, the trial court did not err in awarding the fees Brody actually owed pursuant to her fee agreement and refusing to award fees in excess of her actual reasonable attorney fees.

## II. Costs

Brody states that we need consider the trial court's costs order only if we reverse the judgment awarding attorney fees. Therefore, in light of our determination above, we do not address the merits of the costs order.

The judgment and the order are affirmed.

Judge LICHTENSTEIN and Judge PLANK * concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2007.